UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN LANDI and LORI LANDI,

    Plaintiffs,

v.                                                Case No:   2:17-cv-701-FtM-38MRM

HOME DEPOT USA, INC. and MAKITA
USA, INC.,

    Defendants.
_____/

## ORDER

Pending before the Court is Defendants' Motion to Determine Protocol to Disassemble the Subject Miter Saw, filed on February 8, 2018. (Doc. 26). Plaintiffs filed a Response opposing the saw's disassembly on March 14, 2018. (Doc. 32). Defendants filed a Reply to Plaintiffs' Response on April 11, 2018. (Doc. 36). This matter is ripe for review.

**I.**    **Background**

Plaintiffs originally brought this action in state court, but Defendants removed it to federal court on December 19, 2017. (Doc. 1). Plaintiffs' Amended Complaint seeks damages for alleged injuries resulting from a miter saw severing Plaintiff John Landi's arm. (Doc. 2 at ¶¶ 1, 17). Plaintiffs allege that Defendant Makita USA, Inc. designed and manufactured the saw and that Defendant Home Depot USA, Inc. marketed, advertised, distributed, and sold the saw. (*Id.* at 2). Plaintiffs allege that the saw blade contained manufacturing and design defects that caused it not to function as safely as expected. (*Id.* at 4). Plaintiffs allege that the saw's defects are the direct and proximate causes of John's alleged injury. (*Id.* at 4-5, 10-11).

Defendants contest Plaintiffs' allegations and assert various defenses. (Doc. 6 at 11-12; Doc. 7 at 11-12). In pertinent part, Defendants assert affirmative defenses that the alleged injury

and loss resulted from misuse of the saw and/or that the saw was substantially changed after it left Defendants' control. (Doc. 6 at 12; Doc. 7 at 11-12).

In support of these defenses, Defendants contend that disassembly of the subject saw should be permitted. (Doc. 26 at 2-3). Defendants argue that such testing is necessary "to inspect areas that cannot be seen while the saw is fully assembled by the naked eye and to document the inner components of the subject saw." (*Id.* at 3).

In support of this argument, Defendants note that in addition to the saw blade, "which is designed to retract and cover the blade as the blade is raised," the subject saw also has an adjustable laser beam. (*Id.* at 2). When properly aligned, Defendants state that the laser beam creates a line where the blade will cut the material to assist with accuracy. (*Id.*). When Defendants previously performed a non-destructive inspection of the saw's exterior, however, Defendants noted that (1) the blade guard appeared to be obstructed, (2) a new blade was on the saw, (3) white debris covered portions of saw, and (4) the laser beam appeared to be out of position. (*Id.* at 2-3). As a result of these findings, Defendants contend that additional testing is needed. (*See id.*).

For their part, Plaintiffs oppose the testing proposed by Defendants. (*See* Doc. 32 at 1). Indeed, Plaintiffs seek an Order preserving the saw in its current condition. (*Id.*).

The parties' disagreements regarding the need for disassembly first arose in state court prior to removal. (*See* Doc. 32 at 2; *see also* Doc. 32-2). There, the court granted Defendants' Motion to Preserve Evidence. (*See id.*). In pertinent part, the state court order provided that the saw would be maintained in as close to the current condition as possible and laid out basic guidelines for inspections and testing. (Doc. 32-2). Additionally, however, the state court allowed a hand-written modification to the order based on Plaintiffs' insistence, which

modification states that the order "shall not be interpreted to be an agreement to allow for disassembly but shall not bar it." (Doc. 32 at 2 (quoting Doc. 32-2 at 2)).

After the case was removed to federal court, the parties completed a joint Case Management Report. (Doc. 24). In the Case Management Report, the parties stipulated that the state court order would be maintained. (*Id.* at 9). Nevertheless, the parties also stipulated that some disassembly is necessary to document and inspect the parts of the saw that are not visible. (*Id.*). Specifically, the parties stipulated:

> The parties agree that each party shall have an equal access to inspect and conduct nondestructive testing of the subject saw, and that no party will be charged an access fee in order to inspect the saw. The parties will continue to abide by the Order Preserving Evidence entered by the state court judge on September 26, 2017.
>
> The parties agree that the subject saw needs to be disassembled to some degree to inspect and document the parts that are not visible. The parties will endeavor to agree to a protocol governing the disassembly procedure. The parties agree that all parties will be present during any disassemble or destructive testing of the subject saw unless otherwise agreed to or waived in writing by a party. If the parties reach an impasse in determining a protocol then either party may bring a motion before the Court to determine an appropriate protocol to disassemble the saw.

(Doc. 24 at 9).

Consistent with the parties' stipulation, Defendants sent Plaintiffs' counsel a proposed protocol. (Doc. 26 at 4). To this point, however, Plaintiffs have not agreed to Defendants' proposed protocol. (*Id.*). This prompted the current Motion by which Defendants request that the Court enter an Order determining a protocol for disassembly of the subject saw. (*Id.* at 1).

## II. Legal Standards

In reviewing Defendants' request, the Court notes that Fed. R. of Civ. P. 26(b)(1) permits parties to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Additionally, Fed. R. of Civ. P. 34(a)(1)(B) permits the testing of any "tangible things" within the scope of Rule 26(b). In the instant

Motion, however, Defendants seek to conduct testing that requires disassembly of the subject miter saw. (*See* Doc. 26 at 3; *see also* Doc. 26-1). One potential side effect of such testing is that the saw may be irreversibly altered. (*See id.*). Consequently, the proposed testing may constitute "destructive testing." *See Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 612 (D. Md. 2006).

Destructive testing occurs when the testing will "irreversibly alter" a piece of evidence. *Id*. Even so, destructive testing falls under the scope of Rule 34. *See, e.g.*, *Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.*, 249 F.R.D. 390, 392 (S.D. Fla. 2008); *see also Mirchandani*, 235 F.R.D. at 613. As with all discovery matters, district courts have wide discretion in ruling on discovery motions. *See Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996); *see also Dabney v. Montgomery Ward & Co., Inc.*, 761 F.2d 494, 498 (8th Cir. 1985) (holding that the decision to permit destructive testing lies solely in the court's discretion).

The parties do not cite, and the Court has not found, any controlling authority on the issue of destructive testing by or within the Eleventh Circuit. Nonetheless, Defendants cite to an illustrative case from the United States District Court for the District of Maryland, *Mirchandani v. Home Depot, U.S.A., Inc*. (Doc. 26 at 5).

In *Mirchandani*, the court granted the plaintiffs' motion to conduct inspection and testing, holding that destructive testing should be permitted so as to allow the plaintiffs to substantiate their claim. *Mirchandani*, 235 F.R.D. at 617. There, the plaintiffs sought damages arising from an allegedly defective ladder after it collapsed while one plaintiff was climbing on it. *Id.* at 612. According to the plaintiffs, the defect was due to the composition of the ladder's locking bolts, which allegedly allowed the ladder to move from the locked to unlocked position. *Id*. To support their argument, the plaintiffs moved to conduct "destructive testing" that would

4

"irreversibly alter" the bolt. *Id*. Upon completing the tests, the ladder was to be reassembled using a new bolt. *Id*. at 616. The defendants opposed the testing because they intended to present the ladder as evidence to the jury at trial in the same condition it was at the time of the accident. *See id*.

In deciding this issue, the court laid out four factors to balance the importance of preserving evidence against permitting the tests. *Id*. The factors included:

> (1) [w]hether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) [w]hether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; (3) [w]hether there are any less prejudicial alternative methods of obtaining the evidence sought; and (4) [w]hether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Id*. at 614 (citing *Cameron v. District Court In & For First Judicial Dist.*, 565 P.2d 925 (Colo. 1977)). Ultimately, the court held that the factors weighed in favor of the plaintiffs' need to substantiate their claim. *Id*. at 617. The court, therefore, permitted the destructive testing. *Id*.

Although the Court has not found any controlling authority, trial courts within the Eleventh Circuit have previously found *Mirchandani* persuasive. *See Penny v. AT&T Corp.*, No. 6:15-CV-557-ORL-31KRS, 2015 WL 12859342, at *3 n.2 (M.D. Fla. Aug. 19, 2015) (citing *Mirchandani*, 235 F.R.D. at 614-17); *see also Campbell v. Pirelli Tire, LLC*, No. 12-21153-CV, 2013 WL 12092518 (S.D. Fla. Feb. 1, 2013) (citing *Mirchandani*, 235 F.R.D. at 612). In *Campbell v. Pirelli Tire, LLC*, for instance, the United States District Court for the Southern District of Florida followed *Mirchandani* in denying the plaintiffs' motion seeking to conduct destructive testing. *Campbell*, 2013 WL 12092518, at *2-3. Similarly, in *Penny v. AT&T Corp.*,

although not specifically addressing destructive testing, this Court cited to *Mirchandani* persuasively in a footnote. *Penny*, 2015 WL 12859342, at *3 n.2.[1]

Based on the similarities between *Mirchandani* and the current case, and given that there is no contrary controlling authority on point, the Court finds *Mirchandani* highly persuasive and illustrative in resolving the instant Motion. The Court, therefore, applies the *Mirchandani* factors here to determine whether disassembly of the saw should be permitted.

## III. Analysis

Under the test set forth in *Mirchandani*, the Court balances the benefits of obtaining the evidence sought against the value of preserving the original evidence to determine whether to permit destructive testing. *See Mirchandani*, 235 F.R.D. at 614; *Campbell*, 2013 WL 12092518, at *1-2. To make this determination, the Court considers each of the four *Mirchandani* factors individually.

Specifically, the Court first considers whether the proposed testing is reasonable, necessary, and relevant to proving Defendants' defenses. *See Mirchandani*, 235 F.R.D. at 614-17; *see also Campbell*, 2013 WL 12092518, at *1-2. Second, the Court evaluates whether Plaintiffs' ability to present evidence at trial will be hindered, or whether Plaintiffs will be prejudiced in some other way. *Id.* Third, the Court considers whether there are any less prejudicial alternative methods of obtaining the evidence sought. *Id.* Finally, the Court reviews whether adequate safeguards exist to minimize prejudice to Plaintiffs, particularly Plaintiffs' ability to present evidence at trial. *Id.*

The Court analyzes each of the *Mirchandani* factors below.

---

[1] In *Penny*, this Court noted that, although destructive testing was not raised by the parties, the facts in the case were insufficient to permit destructive testing under *Mirchandani*. *Penny*, 2015 WL 12859342, at *3 n.2 (citing *Mirchandani*, 235 F.R.D. at 614-17).

### A. Reasonable, Necessary, and Relevant

First, Defendants must show that the testing is reasonable, necessary, and relevant to the present case. *See Mirchandani*, 235 F.R.D. at 615; *Campbell*, 2013 WL 12092518, at *2. To do this, Defendants must show that the evidence sought through destructive testing is integral to proving Defendants' case and does more than strengthen an already established claim or defense. *See id*. Nevertheless, the burden is not so high as to require definitive proof that Defendants' hypothesis will prove correct. *See Mirchandani*, 235 F.R.D. at 614; *see also Campbell*, 2013 WL 12092518, at *2.

Defendants argue that the non-destructive testing previously performed suggests that the saw may have been damaged prior to the alleged injury. (*See* Doc. 26 at 6). Specifically, Defendants state that previous testing suggests that (1) the blade guard appeared to be obstructed, (2) a new blade was on the saw, (3) white debris covered portions of saw, and (4) the laser beam was out of position. (*Id.* at 2-3). As a result, Defendants contend that substantial changes in the saw's condition may have caused the alleged injury. (*See* Doc. 36 at 3-5). Alternatively, Defendants argue that the product may have been misused. (*Id.* at 5 (citing Doc. 37 at 3)).

Due to these potential changes in the saw's condition, Defendants contend that the proposed testing – including disassembly of the saw – is "[t]he only way for Defendants to fully investigate why the blade guard is not working." (Doc. 26 at 6). Furthermore, Defendants note that testing is "limited to the components at issue and the saw can be re-assembled after the inspection." (*Id.* at 7). Defendants argue, therefore, that the testing is reasonable, necessary, and relevant to substantiating their defenses. (*Id.*).

Although Plaintiffs did not specifically organize their arguments into the *Mirchandani* factors, Plaintiffs argue that their claim lies in the defect of the blade itself. (Doc. 32 at 2).

Consequently, Plaintiffs contend that any questions regarding the blade guard's position are irrelevant. (*Id.*). Further, Plaintiffs point to their expert's opinion that the saw's laser will not be able to be reassembled to the exact condition. (*Id.* at 1 (citing Doc. 32-1 at 8)). As a result, Plaintiffs argue that the proposed testing will destroy the saw's current condition and thereby "change the nature of the evidence." (*Id.*).

The Court finds Defendants' arguments to be more persuasive. In reaching this conclusion, the Court notes that Defendants' liability in this case may turn on whether there were substantial changes to the saw after it was purchased, whether the saw was misused, and the defenses Defendants have predicated on those facts. Further, as pointed out by Defendants, the new saw blade, the misalignment of the laser beam, and the debris covering part of the saw suggest that substantial changes may have occurred after the saw left Defendants' control. (*See* Doc. 26 at 3-4). As a result, the proposed testing appears necessary and relevant to substantiating Defendants' defenses. Moreover, because Defendants intend to attempt to reassemble the saw to nearly the same condition after testing, the proposed testing protocol appears reasonable. (*Id.* at 6; Doc. 36 at 9).

Based on the foregoing, the Court finds that the first factor weighs in favor of Defendants because Defendants have met their burden of showing that the proposed testing is reasonable, necessary, and relevant.

    **B.**    **Prejudice to Non-Movant**

Because destructive testing may destroy evidence useful to Plaintiffs' case, the potential prejudice to Plaintiffs must be considered. *See Mirchandani*, 235 F.R.D. at 615. Nonetheless, a "material change in the appearance of the object . . . is insufficient to categorically prohibit destructive testing." *Id*.

Defendants contend that Plaintiffs will not be prejudiced at trial. (*See* Doc. 36 at 7-9). In support, Defendants argue that the saw has already been changed because the blade is not at the same angle that it was at the time of the accident. (*Id.* at 7). Defendants contend, therefore, that any further changes that may occur through testing would not prejudice Plaintiffs. (*See id.*).

Additionally, Defendants argue that, because the saw will be reassembled to its current condition, the proposed testing may not even amount to destructive testing. (Doc. 26 at 6). In support, Defendants contend that that "there is no real prejudice to a party if the product is reassembled after testing and the jury is able to observe its general condition." (Doc. 36 at 9 (citing *Mirchandani*, 235 F.R.D. at 616)). Defendants contend, therefore, that Plaintiffs will not be prejudiced by the proposed testing. (*Id.*).

Furthermore, Defendants argue that Plaintiffs have other means by which to present evidence. (*See id*. at 8). Indeed, Defendants note that Plaintiffs have possessed the saw for over a year. (*Id.*). Thus, Defendants contend that Plaintiffs have had ample opportunity to document the saw. (*Id.*). Defendants note that they also documented the condition of the saw. (*Id.*). As a result, Defendants contend that the proposed testing will not prejudice Plaintiffs because the saw's exterior is well documented. (*Id.*).

As a final matter, Defendants note that Plaintiffs previously stipulated to disassembly of the saw. (*Id.* at 2). Specifically, Defendants point to the joint Case Management Report in which the parties agreed that "the subject saw needs to be disassembled to some degree to inspect and document the parts that are not visible." (*Id.* (citing Doc. 24 at 9)). Defendants contend that Plaintiffs have neither attempted to amend or withdraw their stipulation nor proposed any counter-protocol. (*Id.*). Defendants argue, therefore, that Plaintiffs should be held to their prior stipulation. (*Id.*).

Rather than specifically objecting to the proposed protocol, Plaintiffs request that the Court prohibit destructive testing of any kind. (Doc. 32 at 1). In support, Plaintiffs argue that they will be prejudiced because they intend to present the saw at trial in the same position as it was immediately after the accident. (*Id.*). Further, Plaintiffs note their expert's opinion that it would be impossible to reassemble the saw into its exact condition. (*See id.* (citing Doc. 32-1 at 8)). As a result, despite reassembly, Plaintiffs note that a jury will not be able to consider the evidence in the "as found condition." (*Id.*). Consequently, Plaintiffs assert that they will be prejudiced at trial if the destructive testing were permitted. (*Id.* at 4).

Additionally, Plaintiffs contend that there is no stipulation to Defendants' proposed disassembly due to its destructive nature. (*Id.* at 3). Plaintiffs state that they have not agreed to any "written destructive testing protocol, and no written protocol was attached to the case management report." (*Id.*). Further, contrary to Defendants' arguments, Plaintiffs suggest that the Court did not accept the joint Case Management Report because it issued deadlines other than the stipulated deadlines in the joint Case Management Report. (*See id.* (citing Doc. 24 at 9)). Plaintiffs further note that they orally objected to any disassembly during the Preliminary Pretrial Conference. (*Id.*).

Instead, Plaintiffs argue that the Court should maintain the status quo that has existed in this case. (*Id.* at 4). Specifically, Plaintiffs argue that the saw should continue to be maintained in its current condition in protective storage. (*See id.*). Otherwise, the jury will not be able to see the saw in the condition it was in immediately after John Landi's injury occurred. (*Id.*).

The Court begins by acknowledging the importance of preserving evidence for presentation at trial. Courts have held that a subsequent change in condition of an object does not negate the importance of preserving evidence in its current condition. *See Guerrero v.*

*General Motors Corp.*, No. 1:06-cv-01539-LJO-SMS, 2007 WL 3203014, at *3-5 (E.D. Cal. Oct. 29, 2007) (holding that, despite having been stuck in one position at the time of the accident, a seatbelt auto-retracting five to seven inches did not diminish the importance of preserving the evidence's present condition). Here, permitting testing could prejudice Plaintiffs' ability to present evidence at trial as it now exists.

Nevertheless, for the reasons argued by Defendants, the Court finds that the potential for prejudice to the Plaintiffs is minimal. The saw will be reassembled and, thereby, made presentable at trial in its general condition. Additionally, both parties have had and will have additional ample opportunity to document the saw's exterior before the proposed testing occurs. In other words, the parties have had and will have additional ample opportunity to document, photograph, and videotape the saw's condition before the testing is performed and while the testing takes place. The reassembly of the saw in its general condition after testing and the availability of photographic and videotape evidence regarding the saw's pre-testing condition militate against any potential for prejudice against Plaintiffs.

Furthermore, the Court also notes that, despite orally objecting at the hearing, Plaintiffs previously stipulated to some disassembly of the saw. (Doc. 24 at 9). Indeed, the parties stipulated in the joint Case Management Report that some disassembly is necessary. (*Id.*). The Court rejects Plaintiffs' suggestion that they should not be held to the stipulation in the joint Case Management Report simply because the Court issued different case management deadlines in the Case Management and Scheduling Order. (*See* Doc. 32 at 3-4). Contrary to Plaintiffs' suggestion, the Court did not reject the parties' stipulation merely by issuing different case management deadlines. (*See* Doc. 29).

Furthermore, although Plaintiffs argue that the state court order should be maintained, (Doc. 32 at 4), the Court notes that the state court order does not bar disassembly of the saw, (Doc. 32-2 at 2). In fact, based on Plaintiffs' specific insistence, the order states that it "shall not be interpreted to be an agreement to allow for disassembly *but shall not bar it*." (*Id.* (emphasis added)).

In sum, the Court finds that although the proposed testing may potentially prejudice Plaintiffs' ability to present the object in its current condition at trial, the Court also finds that prejudice to be minimal. For the reasons argued by Defendants and set forth above – including that the saw will be reassembled and that the parties have had and will have ample time to document the saw's condition – the Court finds that the potential for prejudice to Plaintiffs is minimal. Accordingly, this factor weighs only slightly in favor of Plaintiffs.

### C. Non-Destructive Alternative Methods

The next factor that the Court must consider is whether there are any non-destructive alternative methods by which Defendants may obtain the evidence sought. *See Mirchandani*, 235 F.R.D. at 616. This factor requires the non-movant – here Plaintiffs – to suggest alternative methods. *See id.* Under *Mirchandani*, Plaintiffs may recommend any alternative methods that they deem adequate. *See id.*

In their Response, Plaintiffs suggest only one alternative method—*i.e.*, that Defendants test a different, exemplary saw, which could be set to match the subject saw's current configuration. (Doc. 32 at 2). Plaintiffs argue that this would allow testing to occur without changing the saw's nature or condition. (*See id.*).

In their Reply, however, Defendants argue that an exemplary saw would be inadequate because it is impossible to perform tests to determine whether substantial changes caused the

alleged defect without the substantial changes being present. (Doc. 36 at 5-6). Defendants argue that these changes include (1) the bending of the laser assembly, (2) the position of the blade replacement, (3) the type of debris and its exact amounts, and (4) the potential changes in the return spring. (*See id.* (internal citations omitted)). Moreover, Defendants contend that some changes cannot be fully known without disassembly. (*See id.*). Thus, Defendants argue that the saw's "exact amount of wear and tear" cannot be replicated. (*Id.* at 5). As a result, to obtain the evidence to substantiate their possible defenses, Defendants argue that an exemplary saw is an inadequate alternative. (*Id.*).

The Court finds Defendants' arguments persuasive. (Doc. 26 at 2-3). It is likely that the alleged changes to the saw cannot be adequately replicated with an exemplary saw and then tested in the manner Defendants would need in order to attempt to support their defenses. Accordingly, the Court finds that this factor weighs in favor of Defendants.

### D. Adequate Safeguards

The final factor that the Court must determine is whether there are adequate safeguards to minimize any prejudice to Plaintiffs. *See Mirchandani*, 235 F.R.D. at 616. Here, the Court must determine whether the proposed protocol has adequate safeguards to protect Plaintiffs' ability to present evidence at trial. *See id.*

The court in *Mirchandani* suggested six safeguards:

(1) Adequate opportunities for the non-movants to photograph or otherwise record the character and condition of the object to be tested prior to the destructive testing, (2) notice to the non-movants of the time, place, and exact manner of the destructive testing, (3) reasonable opportunity for the non-movants and their experts to observe and record the procedures involved in the destructive testing, (4) the right of the non-movants to conduct or participate in similar tests with a portion of the sample to be tested, (5) provisions for discovery of the results of the movant's tests, (6) allocation of the costs as justice may require.

*Id.* (internal citations omitted).

Defendants contend that there are adequate safeguards to protect Plaintiffs' ability to present evidence at trial. (Doc. 36 at 8-9). For instance, Defendants note that Plaintiffs possessed the saw for over a year, giving them ample time to photograph or record the saw prior to testing. (*Id.* at 8).

Additionally, Defendants argue that the proposed protocol has a variety of other safeguards. (*Id.* at 8-9). For example, Defendants contend that the proposed protocol follows a "detailed progression to allow for each step to be properly documented by both parties." (*Id.* at 9). Defendants also argue that the proposed protocol follows established guidelines used for disassembly. (*Id.* (citing Doc. 37 at 3)). Finally, Defendants state that the proposed protocol calls for reassembly of the saw after testing. (*Id.*). Defendants, therefore, argue that the proposed protocol has adequate safeguards to ensure that any prejudice to Plaintiffs is minimalized. (*See id.* at 8-9).

Plaintiffs do not make a specific argument regarding the safeguards present in the proposed protocol. (*See* Doc. 32). Instead, Plaintiffs entirely oppose destructive testing for the reasons outlined above. (*See id.*).

The Court again finds Defendants' arguments persuasive. The proposed protocol presents clear guidelines for how testing will occur. (*See* Doc. 26-1). For instance, the Court notes that photographs and video recordings will be available to show a jury or assist Plaintiffs in making their claim. (*See id.*). The proposed protocol also allows video recording during the testing. (*Id.* at 2). Further, the testers will take x-ray images at designated stages of the examination. (*Id.*). Moreover, the parties may examine each artifact and its corresponding exemplar in detail. (*Id.*). In addition, each artifact and exemplar will be made available for non-destructive examination and documentation before and after removal. (*Id.*). Similarly, as the

parties stipulated in the joint Case Management Report, all parties must be present for testing unless waived in writing. (Doc. 24 at 9).

Consequently, under the proposed protocol, Plaintiffs will have the opportunity to be present for, to participate in, to observe, and to document all testing that occurs pursuant to the protocol. (*See id.*; *see also* Doc. 26-1 at 2-3). Moreover, although not expressly stated in the protocol, Defendants have represented to the Court that the saw will be reassembled. (Doc. 26 at 6; Doc. 36 at 9). In consideration of the foregoing, the Court finds that the proposed protocol contains adequate safeguards to minimize further any prejudice to Plaintiffs. Accordingly, the Court finds that this factor weighs in Defendants' favor.

### E. Balancing the Factors

Because the *Mirchandani* analysis is a balancing test, the Court weighs the factors to determine whether to permit disassembly here. *See Mirchandani*, 235 F.R.D. at 617. For the reasons stated above, factors one, three, and four weigh in favor of Defendants. The second factor weighs slightly in favor of Plaintiffs. In balancing all the factors, the Court finds that they weigh in Defendants' favor such that disassembly of the saw pursuant to the proposed protocol should be permitted. *See id.*

## IV. Defendants' Proposed Protocol

Having found that disassembly of the saw should be permitted, the Court now addresses Defendants' proposed protocol. The Court briefly addressed the proposed protocol in Part III.D., *supra*. As discussed above, the Court finds that the proposed protocol includes adequate safeguards. Additionally, the Court notes that Plaintiffs have raised no specific objections to the terms of the proposed protocol. (*See* Doc. 32). In the absence of any specific objections from

Plaintiffs, the Court finds that testing should be permitted in accordance with Defendants' proposed protocol. (*See* Doc. 26-1).

Although not specifically described in the protocol itself, Defendants have represented to the Court that the saw will reassembled after testing. (*See* Doc. 26 at 6; Doc 36 at 9). Based upon that representation, the Court deems the protocol to include a requirement that the saw be reassembled after testing. The Court will, therefore, require that the subject miter saw be reassembled after testing.

**V.     Conclusion**

For the reasons set forth above, the Court finds that disassembly of the subject miter saw must be permitted pursuant to Defendants' proposed protocol and consistent with this Order.

Accordingly, the Court hereby **ORDERS** that:

Defendants' Motion to Determine Protocol to Disassemble the Subject Miter Saw (Doc. 26) is **GRANTED**, as set forth above.

**DONE AND ORDERED** in Fort Myers, Florida on July 17, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties