UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN LANDI and LORI LANDI,
Husband

       Plaintiffs,

v.                                                    Case No.: 2:17-cv-701-FtM-38MRM

HOME DEPOT USA, INC. and
MAKITA USA, INC.

       Defendants.
_____/

**OPINION AND ORDER**[1]

Before the Court are Defendant Makita USA, Inc.'s Motion for Partial Summary Judgment on Plaintiffs' Strict Liability and Negligence Claims (Doc. 87) and Motion for Partial Summary Judgment on Plaintiffs' Failure to Warn Claims (Doc. 88), Defendant Home Depot USA, Inc.'s Motion for Partial Summary Judgment (Doc. 91), Defendants' Motion to Strike or Exclude Untimely Opinions of Dr. Charles E. Benedict (Doc. 89) and Motion to Exclude, as Unreliable, Expert Testimony of Dr. Charles E. Benedict (Doc. 90), and Plaintiffs John and Lori Landi's responses (Doc. 98; Doc. 99; Doc. 104; Doc. 105; and Doc. 108).

**Background**

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

This products liability case arises from an injury John Landi suffered while operating a miter saw manufactured by Makita and allegedly purchased from Home Depot. Plaintiffs' case relies in part on the opinions of their expert witness, Dr. Charles E. Benedict. Defendants have asked the Court to exclude Dr. Benedict's testimony and grant them summary judgment on certain claims.

The following facts are undisputed. John Landi worked as a general contractor beginning in 2009. (Doc. 102 at 23). Landi claims that in September 2014, he purchased a Makita 10' miter saw from Home Depot Store # 280 in Naples, Florida. (Doc. 88 at 2; Doc. 105 at 4). Landi says he told a Home Depot employee he was looking for a saw that "would be able to cut crown molding, baseboards, chair rail molding and wood flooring." (Doc. 102 at 64). The employee pointed Landi to the Makita saw, Landi decided it was what he was looking for, and the employee loaded a box onto Landi's cart. (Doc. 102 at 64-65).

When Landi took the saw home and opened the box, the saw appeared to be new, but it did not include upper fences and a vertical vise. (Doc. 102 at 90, 99). The saw was packaged with an instruction manual, which Landi read and considered "clear and understandable." (Doc. 88). The manual warns the user not to "perform any operation freehand" or "use your hand to secure the workpiece." (Doc. 88-3 at 4). It instructs the user to instead "ALWAYS use vise to secure workpiece." (Doc. 88-3 at 4).

On October 8, 2015, Landi used the saw to cut a section of crown molding, operating the saw with his right hand and holding the crown molding with his left. (Doc. 102-1 at 24-29). While the blade was spinning, the piece of molding was pulled to the

right, Landi's left arm went with it, and the blade cut into Landi's left forearm. (Doc. 102-1 at 29-34).

**A. Motion to Exclude Testimony of Dr. Benedict under *Daubert***

Federal Rule of Evidence 702 provides the starting point when considering the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that trial courts have a gatekeeping function designed to test expert evidence for relevance and reliability. In performing this function, the Court applies a "rigorous three-part inquiry" by considering whether (1) the expert is qualified to testify competently about the issues at hand, (2) the expert's methodology is sufficiently reliable, and (3) the expert's testimony helps the trier of fact understand the evidence or determine a factual issue. *U.S. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." *Id*. Defendants' challenges span all three elements, and Plaintiffs must prove each by a preponderance of the evidence. *Id.*

Dr. Benedict has worked as an engineer since 1971, when he earned a Ph.D. in mechanical engineering. (Doc. 99-1 at 19-24). Since then, he has co-authored more

than 20 publications, filed over 100 patents (including one for a miter saw blade guard) and testified in more than 200 trials. (Doc. 99-1 at 21-23). In his expert report, Dr. Benedict provided Defendants a list of twenty-one opinions he planned to express at trial, including foreseeable ways users will operate and alter the saw, dangerous defects in the saw's design, feasible alternative designs, steps Makita could have taken to avoid the design defects, and how the defects caused Landi's injury. (Doc. 99-1).

    1. <u>Qualifications</u>

Defendants contend that while Dr. Benedict is an expert in some fields, he is not "uniquely qualified" to opine about miter saw design and manufacture, product warnings and instructions, saw operation, biomedical engineering, or human factor considerations relating to miter saws. (Doc. 90 at 7-11). To support their attack, Defendants list some things Dr. Benedict has not done, like work for a power tool manufacturer and design a saw that was sold to the public. (Doc. 90 at 9). But Defendants set an impossibly high standard. A person need not be "uniquely qualified" to testify as an expert, and Dr. Benedict's failure to gain expertise one way (e.g., working for a manufacturer), does not invalidate his education, training, and over 40 years of experience as a mechanical engineer. The Court finds that Dr. Benedict is qualified under Rule 702 to testify about the matters he intends to address.

    2. <u>Reliability</u>

Under the guise of attacking Dr. Benedict's methodology, Defendants let fly a bevy of reasons Dr. Benedict's opinions are unpersuasive. (Doc. 90 at 12-16). But when performing its gatekeeping function, the Court is concerned with admissibility, not the credibility of Dr. Benedict or the weight of his testimony. Defendants may instead use

"traditional and appropriate means of attacking" Dr. Benedict's testimony, such as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

### 3. Helpfulness

Defendants confront the helpfulness of Dr. Benedict's opinions as they attacked reliability, by listing reasons the trier of fact should not believe him. These points are appropriate fodder for cross-examination; they do not render Dr. Benedict's opinions inadmissible. The Court finds that Dr. Benedict's testimony will help the jury understand the evidence and decide whether a defect in the saw caused Landi's injury. It is up to the jury to decide whether Dr. Benedict's conclusions are correct.

**B. Motion to Strike or Exclude Untimely Opinions of Dr. Benedict**

In their next motion, Defendants accuse Dr. Benedict of withholding biomechanical engineering opinions from his report before disclosing them at his deposition, months after the deadline to disclose expert reports. Defendants ask the Court to preclude Dr. Benedict from "rendering any biomechanical engineering opinions at the trial" and "from commenting, critically or otherwise, on the opinions of Defendants' biomechanical engineering expert." (Doc. 89 at 13). But Defendants have drawn no clear line between the mechanical engineering opinions in Dr. Benedict's report and the biomechanical engineering opinions they want excluded. Nor do they identify specific opinions that the Court should exclude.

An exchange during Dr. Benedict's deposition highlights the confusion about what makes an opinion biomechanical in nature. Dr. Benedict agreed that his report contains no biomechanical opinions, then said, "it really has more to do with looking at the angles

and matching them up. It doesn't have anything to do with biometrics per se, although you can look at it from a biomechanical point of view." (Doc. 98-1 at 8-9). Without a consensus on what makes an opinion a "biomechanical engineering opinion," an order prohibiting Dr. Benedict from expressing such opinions would tee up a semantic dispute for the middle of trial.

Defendants have also failed to demonstrate a current need for an order limiting Dr. Benedict's testimony. The cases they cite as support for exclusion all involved expert disclosures that were either late or inadequate. *See Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 1837724 (S.D. Fla. May 3, 2010); *United States v. Batchelor-Robjohns*, No. 03-20164-CIV, 2005 WL 1761429 (S.D. Fla. 2005); *Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2016 WL 6138653 (M.D. Fla. Oct. 21, 2016); *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241 (M.D. Fla. 2012); *K & H Dev. Grp., Inc. v. Howard*, 255 F.R.D. 562 (N.D. Fla. 2009); *and Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-CV-947-J-34HTS, 2009 WL 1139575 (M.D. Fla. Apr. 27, 2009). But Defendants admit that Plaintiffs timely disclosed Dr. Benedict's only expert report (Doc. 89 at 3), and Magistrate Judge Mac R. McCoy already found the report to be adequate (Doc. 61). Plaintiffs have not signaled that Dr. Benedict will give opinions not disclosed in his report by submitting an amended or supplemental report. Nor have they argued that the Court should allow Dr. Benedict to testify about issues they did not timely disclose. If Plaintiffs' direct examination of Dr. Benedict exceeds the scope of his expert report, Defendants can object at the proper time. But the Court will deny their motion to strike or exclude.

**C. Summary Judgment**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citations omitted).

    1. <u>Strict Liability – Manufacturing and Design Defects (Counts 7 & 8)</u>

Makita argues it is entitled to summary judgment on two of Plaintiffs' strict liability claims because Landi "was using the subject saw in a wholly unintended manner at the time of the incident." (Doc. 87 at 11). Makita lists four ways Landi "misused" the saw:

> (1) operating the saw without two of its principal component parts (*i.e.*, the upper fences and the vertical vise); (2) failing to secure the workpiece with the upper fences and vertical vise, in addition to the right and left crown-molding stoppers, the latter of which he chose not to purchase; (3) attempting to perform the task "freehand" with his hand and arm in dangerously close proximity to the cutting blade; and (4) operating the saw with the blade guard stuck or intentionally pegged in the full open position.

(Doc. 87 at 13-14). Because Plaintiffs dispute most of these "misuses," the Court can pare them down to one. As for the first two, Landi testified that the saw he purchased did not have upper fences or a vertical vise, and the parties agree that the crown-molding stoppers were optional add-ons. The Court will leave it to the jury to decide whether Landi's operation of the saw without these missing parts constituted "misuse." And as for the fourth, Landi testified that the blade guard was moving properly before the accident, and his expert witness agrees that the guard was likely working when Landi started to cut the workpiece.[2] (Doc. 102-1 at 34). The Court will thus limit its analysis to the only undisputed factual basis for Makita's argument: Landi was holding the workpiece with his left hand while operating the saw with his right, contrary to warnings in the instruction manual.

The Supreme Court of Florida adopted the doctrine of strict product liability in *West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 87 (Fla. 1976). "Under this standard, the manufacturer of a defective product can be held liable if the manufacturer made the product in question, if the product has a defect that renders it unreasonably dangerous, and if the unreasonably dangerous condition is the proximate cause of the plaintiff's injury." *Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999). But strict liability only applies to a manufacturer if the product was "used for the purpose intended." *High v. Westinghouse Elec. Corp.*, 610 So. 2d 1259, 1262 (Fla. 1992).

At the time of Landi's injury, he was using the saw to cut crown molding. Makita does not argue that cutting crown molding is an unintended use of the saw. Makita

---

[2] This factual dispute also sinks Makita's argument that it is entitled to summary judgment because the saw had been "materially and substantially altered." (Doc. 87 at 16-18).

8

instead argues that the *manner* of Landi's use—securing his workpiece by hand—bars his strict liability claims. The cases Makita cites as support show why its attempt to stretch the misuse defense is unsound. In *Veliz v. Rental Serv. Corp. USA, Inc.*, 313 F. Supp. 2d 1317 (M.D. Fla. 2003), for example, a man was using a forklift to descend from a third-story roof when the forklift tipped over, killing him. The court granted summary judgment to the manufacturer because "use of the [forklift] as a personnel lift was not its intended use." *Veliz*, 313 F. Supp. 2d at 1327. Likewise, in *Jennings*, BIC Corp. was not strictly liable when a child lit his brother's clothes on fire while playing with a BIC lighter because lighters "are not intended to be used as children's playthings." *Jennings*, 181 F.3d at 1256. In both cases, the manufacturers avoided strict liability because their products were used for an unintended purpose, not in an unintended manner.

Because Landi was using the saw for its intended purpose when the injury occurred, Makita is not entitled to summary judgment on Counts 7 and 8.

2. <u>Negligence – Manufacturing and Design (Counts 10, 11, 16 & 17)</u>

Makita also raises Landi's misuse of the saw as a complete defense to his negligent manufacturing and design claims. In Florida, "product misuse is not an absolute bar to a products liability claim sounding in negligence." *Standard Havens Prods., Inc. v. Benitez*, 648 So. 2d 1192, 1197 (Fla. 1994). A court can grant summary judgment for a manufacturer if it determines that the claimant's negligence was the sole legal cause of his injury. *Id.* But when there is evidence of more than one proximate cause of an injury, the issue must be left for the jury. *Martin v. JLG Indus., Inc.*, No. 8:06-CV-234-T-24-TBM, 2007 WL 2320593, at *3 (M.D. Fla. Aug. 10, 2007). In such cases, the plaintiff's misuse

9

"merges into the defense of comparative negligence and reduces Plaintiff's recovery on the negligent design claim in proportion to his comparative fault." *Id.*

Makita again relies heavily on *Veliz*, in which the court granted summary judgment for the manufacturer because the decedent's misuse of the forklift as a personnel carrier was the sole proximate cause of his injuries. *Veliz*, 313 F. Supp. 2d 1317, 1328 (M.D. Fla. 2003). But unlike the plaintiff in *Veliz*, the Landis have presented evidence of a proximate cause other than product misuse. Dr. Benedict opined that a design defect caused the blade guard to become jammed in the "partial down position," which left the blade exposed when Landi's arm was pulled into it. (Doc. 104-3 at 16). So the jury must decide whether and to what extent Landi's misuse of the saw decreases Makita's liability under Counts 10 and 11.

Home Depot moves for summary judgment on the negligent manufacture and design claims pled against it because it did not manufacture or design the saw. Home Depot points to the Affidavit of Toshio Nakagawa as evidence that Makita Corporation designed the saw and Makita Corporation of America assembled it. The Plaintiffs present no rebuttal evidence, nor do they cite any authority suggesting that a retailer who does not design or manufacture a product can be held liable for negligent design or manufacture. Home Depot is entitled to summary judgment on Counts 16 and 17. *See Malvaes v. Constellation Brands, Inc.*, No. 14-21303-CIV, 2015 WL 3874815, at *5 (S.D. Fla. June 23, 2015).

### 3. Negligence – Assembly (Count 19)

In Count 19, the Plaintiffs allege that Home Depot was negligent because it "failed to assemble into the product, at its store, left and right crown molding stoppers." (Doc.

56 at 29). Home Depot argues that it had no duty to assemble the saw, particularly because it was fully assembled and ready to use when Landi took it home and removed it from the sealed box. Home Depot also argues that installation of the crown molding stoppers is a non-issue because Landi testified that he knew they were optional add-ons not included with the saw, decided not to purchase them, and would not have used them at the time of his injury. Plaintiffs' response does not address any of these arguments or otherwise defend the merits of Count 19. The Court finds no legal or factual basis to hold Home Depot liable for negligent assembly, and Home Depot is thus entitled to summary judgment on Count 19.

        4.    <u>Strict Liability and Negligence – Failure to Warn (Counts 9, 12, 15 & 18)</u>

Both Defendants move for summary judgment on Plaintiffs' failure-to-warn claims because (1) Landi read and understood the warnings included with the saw but ignored them and (2) the dangers inherent in using the saw were open and obvious. Home Depot also argues that it had no duty to warn and, even if it did, its failure to warn did not cause Landi's injury.

In Florida, "[s]trict liability and negligent failure to warn cases boil down to three elements that Plaintiff must prove: 1) that the warnings accompanying the item were inadequate; 2) that the inadequacy of the warnings proximately caused Plaintiff's injury; and 3) that Plaintiff in fact suffered injury by using the product." *Colville v. Pharmacia & Upjohn Co., LLC*, 565 F. Supp. 2d 1314, 1321 (N.D. Fla. 2008). Defendants' first attack on the failure-to-warn claims target proximate cause: Plaintiffs cannot establish that inadequate warnings caused Landi's injury because he read the warnings in the

instruction manual but ignored them. (Doc. 88 at 9-14). Plaintiffs fail to address this argument head-on by explaining how inadequate warning proximately caused the injury.

"Where the undisputed facts demonstrate the plaintiff disregarded or ignored an allegedly inadequate warning, the plaintiff cannot establish an ineffective warning was the proximate cause of his injuries, and summary judgment against the plaintiff is appropriate." *Leoncio v. Louisville Ladder, Inc.*, Co. 13-21837-CIV, 2014 WL 11429056, at *4 (S.D. Fla. Apr. 8, 2014). While Plaintiffs resist admitting that Landi ignored the warnings included with the saw, they do not dispute the content of the instruction manual, which warned, "**Do not perform any operation freehand…Never use your hand to secure the workpiece…ALWAYS use vise to secure workpiece.**" (Doc. 88-3 at 4). Nor do Plaintiffs dispute that Landi nonetheless secured the workpiece by hand, despite being warned about the potential consequences: "**If you use this tool unsafely or incorrectly, you can suffer serious personal injury…MISUSE or failure to follow the safety rules stated in this instruction manual may cause serious personal injury.**" (Doc. 88-3 at 4-5). The undisputed evidence thus shows that Landi did not rely on the warnings included with the saw. And Plaintiffs have produced no evidence to repair this break in the causal chain and link the adequacy of the warnings to Landi's injury.

Because Plaintiffs fail to produce evidence that inadequate warnings proximately caused Landi's injury, Defendants are entitled to summary judgment on Counts 9, 12, 15, and 18.

### 5. Breach of Implied Warranty of Merchantability (Count 20)

Home Depot seeks summary judgment on Plaintiffs' claim for implied warranty of merchantability because Landi did not give Home Depot notice of the alleged defect or

the opportunity to cure. Home Depot cites *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351 (Dist. Ct. App. Fla. 1977) for the proposition that notice to the seller is an essential element of Plaintiffs' claim. *Dunham-Bush*, in turn, cites Fla. Stat. § 672.607(3)(a), which states, "Where a tender has been accepted: The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." So it appears Florida law required Landi to notify Home Depot within a reasonable time after he discovered or should have discovered a defect in the saw. Landi's testimony suggests that he did not know of any defect until after his injury. He said that the blade guard "always worked" before the accident (Doc. 102-1 at 42), and that he did not realize the saw should have included the upper fences (Doc. 102 at 90) and vertical vise (Doc. 102 at 99). Home Depot may challenge Landi on these points and argue that he *should have* known the saw was missing important components, but those are issues for the jury. The Court will not grant summary judgment on Count 20.

### 6. Breach of Implied Warranty for a Particular Purpose (Count 21)

Finally, Home Depot seeks summary judgment on Plaintiffs' claim for breach of the implied warranty for a particular purpose because Landi did not advise Home Depot that he intended to use the saw for anything besides its intended purpose. An implied warranty of fitness for a particular purpose "arises where a seller has reason to know a particular purpose for which the goods are required and the buyer relies on the seller's skill or judgment to select or furnish suitable goods." *Royal Typewriter Co., v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983). "A 'particular purpose' differs from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to

13

the nature of his business." *Id.* Summary judgment is appropriate when a plaintiff intends to use the product for "nothing more than its ordinary use." *Czarnecki v. Roller*, 726 F. Supp. 832, 843 (S.D. Fla. 1989);

Landi testified that when he purchased the saw, he told a Home Depot employee he would use it "to cut crown molding, baseboard, chair rail molding and wood flooring." (Doc. 102 at 64). Home Depot argues, and Plaintiffs do not dispute, that these are ordinary uses for which the saw was intended. Hope Depot is thus entitled to summary judgment on Count 21.

Accordingly, it is now

**ORDERED:**

(1) Defendant Makita USA, Inc.'s Motion for Partial Summary Judgment on Plaintiffs' Strict Liability and Negligence Claims (Doc. 87) is **DENIED**.

(2) Defendant Makita USA, Inc.'s Motion for Partial Summary Judgment on Plaintiffs' Failure to Warn Claims (Doc. 88) is **GRANTED**.

(3) Defendant Home Depot USA, Inc.'s Motion for Partial Summary Judgment (Doc. 91) is **GRANTED in part and DENIED in part**.

(4) Defendants' Motion to Strike or Exclude Untimely Opinions of Dr. Charles E. Benedict (Doc. 89) and Motion to Exclude, as Unreliable, Expert Testimony of Dr. Charles E. Benedict (Doc. 90) are **DENIED**.

(5) Counts 9, 12, 15-19, and 21 of the Second Amended Complaint (Doc. 56) are **DISMISSED**.

(6) Plaintiffs John and Lori Landi are **ORDERED** to file a third amended complaint on or before **September 30, 2019**, asserting only the claims from the Second

Amended Complaint that the Court has not dismissed.[3]  Defendants shall file answers to the third amended complaint on or before **October 7, 2019**.

**DONE** and **ORDERED** in Fort Myers, Florida this 24th day of September, 2019.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

---

[3] The purpose of a third amended complaint is to streamline the pleadings for trial.  The Court is not granting Plaintiffs leave to assert facts or legal theories not pled in the Second Amended Complaint.