UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN LANDI and LORI LANDI,
Husband

      Plaintiffs,

v.                                    Case No.:   2:17-cv-701-FtM-38MRM

HOME DEPOT USA, INC. and
MAKITA USA, INC.,

      Defendants.
                                      /

## **OPINION AND ORDER**[1]

Before the Court is Defendants Makita USA, Inc. and Home Depot USA, Inc.'s motion for attorney's fees and costs (Doc. 192), Plaintiff John Landi's response (Doc. 194), and Defendants' reply (Doc. 197).

This is a personal injury case resulting from a miter saw accident that nearly severed Landi's arm.  On November 15, 2019, Defendants served an Offer of Judgment/Proposal for Settlement (Proposal) on Landi in the amount of $45,001.00, which Landi did not accept.  On January 13, 2020, after a five-day trial, the jury returned a verdict for Defendants and awarded Landi nothing.  Defendants then moved for $189,501.00 in attorneys' fees accrued after the Proposal under Fla. Stat. §768.79.  And they request taxation of $23,997.14 in costs under 28 U.S.C. § 1920.  In response, Landi

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

attacks the validity of the Proposal, the reasonableness of the requested fees, and the taxability of Defendants' costs.

## I.     Attorney's Fees

"In the American legal system, each party is traditionally responsible for its own attorney's fees." *In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)).  An exception to the rule applies when "a statute grants courts the authority to direct the losing party to pay attorney's fees."  *Id.*  Fla. Stat. § 768.79 is such a fee-shifting statute.  It states,

> If a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.

Fla. Stat. § 768.79(1).  The Eleventh Circuit has found § 768.79 substantive for *Erie* purposes and therefore applicable in federal diversity cases like this one.  *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1258 (11th Cir. 2011).

Florida Rule of Civil Procedure 1.442 sets out several requirements for the form and content of proposals.  Proposals for settlement must strictly adhere to these requirements because Fla. Stat. § 768.79 "is in derogation of the common law that ordinarily requires each party to pay for its own attorney's fees." *Allen v. Nunez*, 258 So. 3d 1207, 1211 (Fla. 2018) (citation omitted).  But "proposals for settlement are intended to end judicial labor, not create more." *Anderson v. Hilton Hotels Corp.*, 202 So. 3d 846, 853 (Fla. 2016) (citation and quotation marks omitted).  So "courts are discouraged from 'nitpicking' proposals for settlement to search for ambiguity." *Id.*  Relevant here, the rule

requires (1) joint proposals to state the amount and terms attributable to each party and (2) all proposals to "state with particularity" any relevant conditions. Fla. R. Civ. P. 1.442(c)(2)(C), (c)(3).

### A. Validity of the Proposal

Landi first contends the Proposal runs afoul of Florida Rule of Civil Procedure 1.442(c)(3), which requires joint proposals to "state the amount and terms attributable to each party." Defendants conditioned the Proposal on Landi's execution of an attached General Release, which covered Landi's claims against Defendants and a range of affiliated companies and people. Landi argues the Proposal was defective because Defendants did not apportion any part of their offer to the nonparty beneficiaries of the Release. The Court disagrees.

The apportionment requirement has two main functions. It allows the offeree to evaluate the offer with respect to each offeror, and it allows the trial court to separately determine each party's right to recover attorney's fees. *Hoang Dinh Duong v. Ziadie*, 153 So. 3d 354, 359 (Fla. Dist. Ct. App. 2014). Requiring apportionment to nonparty beneficiaries of the Release is not supported by the language of the rule, would not serve its purpose, and does not make logical sense. The Proposal satisfied Rule 1.442(c)(3) by attributing $22,501.00 of the offer to Makita and $22,500.00 to Home Depot.

Landi next argues the Proposal failed Rule 1.442(c)(2)(D)'s particularity requirement, which "requires that the settlement proposal be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification." *State Farm Mut. Auto. Ins. Co. v. Nicholas*, 932 So. 2d 1067, 1079 (Fla. 2006). The Florida Supreme Court has explained the relationship between Rule 1.442 and general releases:

> We caution that rule 1.442 is not intended to revolutionize the language used in general releases. Traditionally, general releases have included expansive language designed to protect the offeror from unforeseen developments or creative maneuvering by the other party. Such language can be sufficiently particular to satisfy rule 1.442. For example, in *Board of Trustees of Florida Atlantic University v. Bowman*, 853 So. 2d 507 (Fla. 4th DCA 2003), the Fourth District concluded that the language in a general release, "even though expansive, is typical of other general releases and is clear and unambiguous." *Id.* at 509. The rule aims to prevent ambiguity, not breadth.

*Id.* at 1079.

Landi contends the Proposal lacked the required particularity because it was inconsistent with the Release, which he suggests would cover "all claims to seek any type of relief arising at any point in the future as to potentially millions of known and unknown people and entities." (Doc. 194 at 10). The Proposal states that it is an attempt to

> [r]esolve all claims by Plaintiff contained in the above-styled matter, and any and all potential claims Plaintiff could make against the Defendants arising out of the same facts and circumstances referred to in the above-styled matter.

(Doc. 192-1 at 3). The Release covers claims against Defendants and a broad group of associated people and companies, collectively defined as "Second Parties." It states, "the First Party [Landi] and Second Parties wish to resolve all claims, disputes, and differences among them that relate to or arise in any way out of the Action." (Doc. 192-1 at 7). By signing the Release, Landi would have agreed to:

> HEREBY remise, release, acquit, satisfy, and forever discharge the said Second Parties, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which said First Party ever had, now has, or which any personal representative, successor, heir or assign of said First Party, hereafter can, shall or may have, against said Second Parties, for, upon or by reason of any matter,

cause or thing whatsoever, from the beginning of the world to the end of these presents.

(Doc. 192-1 at 7-8).

The language in the Release, while broad, is tried and true in Florida. The Fourth District Court of Appeal approved of a materially identical proposal and release in *Costco Wholesale Corp. v. Llanio-Gonzalez*, 213 So. 3d 944 (Fla. Dist. Ct. App. 2017). It found the "Second Parties" definition "typical of other general releases" and "clear and unambiguous." *Costco*, 213 So. 3d at 947 (quotations marks and citation omitted). As for the description of the claims to be released, "it is well-established that this type of all-inclusive language will bar all claims which have matured prior to executing the release[,]" not future claims. *Id.* (quotations marks and citation omitted). The court concluded that the proposal and release language—which Defendants used here—was "sufficiently clear and definite to allow the plaintiffs to make an informed decision on whether to accept the proposals." *Id.*

The proposals from the cases Landi cites fell short for reasons absent here. Some created ambiguity by only vaguely describing the required release, instead of including the full release with the proposal. *See Dryden v. Pedemonti*, 910 So. 2d 854 (Dist. Ct. App. Fla. 2005); *Nichols v. State Farm Mut.*, 851 So. 2d 742 (Dist. Ct. App. Fla. 2003); *Hales v. Advanced Sys. Design, Inc.*, 855 So. 2d 1232 (Fla. 2003). The other proposals lacked particularity due to circumstances particular to each case. *See Sparklin v. So. Indus. Assocs., Inc.*, 960 So. 2d 895 (Dist. Ct. App. Fla. 2007) (ambiguity as to whether a proposal made by one defendant required the plaintiff to release claims against other defendants); *Palm Beach Polo Holdings, Inc. v. Vill. of Wellington*, 904 So. 2d 652 (Dist. Ct. App. Fla. 2005) (ambiguity as to whether the release would extinguish other pending

lawsuits between the parties); Zalis v. M.E.J. Rich Corp., 797 So. 2d 1289 (Dist. Ct. App. Fla. 2001) (the proposal required plaintiff to "relinquish all rights to sue about anything at any point in the future"). According to prevailing Florida precedent, the Proposal satisfies Rule 1.442.

    **B.  Reasonableness of Requested Fees**

When evaluating the reasonableness of an attorney's fee claim that arises from a state statute, federal courts apply state law. Dunworth v. Tower Hill Preferred Ins. Co., No. 05-14019-CIV, 2006 WL 889424, at *1 (S.D. Fla. Feb. 14, 2006). Florida has adopted the federal lodestar approach, supplemented by statutory factors. Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla. 1985).

Under the lodestar method, courts first determine the number of hours reasonable expended in the litigation, and then determine a reasonable hourly rate for the services of the prevailing party's attorney. Id. The number of hours determined in the first step is multiplied by the hourly rate determined in the second step to calculate the lodestar. Id. The statutory factors are:

> 1. The then apparent merit or lack of merit in the claim.  2. The number and nature of offers made by the parties.  3. The closeness of the questions of fact and law at issue.  4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.  5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.  6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

FLA. STAT. § 768.79(7)(b).

The party seeking fees "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman v. Hous. Auth. of City of

*Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). A party opposing fees should make specific and reasonably precise objections to those hours that should be excluded, and the failure to do so is generally fatal. *Andriello v. CFI Sales & Mktg., Inc.*, No. 6:09-CV-208-ORL-35GJK, 2012 WL 3264920, at *5 (M.D. Fla. Jan. 4, 2012). When determining reasonableness of fees, courts are experts and may draw upon their own knowledge and experience with or without the aid of witnesses. *Norman*, 836 F.2d at 1303.

Defendants request $189,501.00 in post-Proposal fees, broken down as follows:

| Timekeeper | Position | Hourly Rate | Hours Billed | Fees |
|---|---|---|---|---|
| Frank Hosley | Senior partner and lead counsel | $325 | 258.7 | $84,077.50 |
| Justin Niznik | Senior counsel | $215 | 240.2 | $51,643.00 |
| Stephanie Simm | Partner | $250 | 46.5 | $11,625.00 |
| Donald Blackwell | Of counsel | $250 | 53.1 | $13,275.00 |
| Richard Russo | Associate | $215 | 10.7 | $2,300.50 |
| Tammie Proffitt | Paralegal | $100 | 265.8 | $26,580.00 |

Defendants' Motion describes the experience of each attorney and paralegal who worked on this case, points to cases in which courts in this District approved higher rates for attorneys and paralegals with comparable experience, and specifically addresses five of the statutory factors. The Motion is supported by the Affidavit of Frank Hosley (Doc. 192-2) and a Billing Report (Doc. 192-3), which records the work performed in six-minute increments and describes the work in detail.

Landi's response is less thorough. The first half of his argument on the reasonableness of the requested fee amount is plagiarized from *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1374-75 (M.D. Fla. 2010). Landi does not argue that defense counsel's rates are unreasonable, object to any particular time entries, or claim that any of the statutory factors favor denial or reduction of fees. He instead broadly

objects to the sufficiency of Defendants' evidence, characterizing—without explanation—the time sheet as non-meticulous and non-contemporaneous and the hours worked as facially excessive. And he argues the Hosley Affidavit is insufficient to prove reasonableness.

The Court finds the rates requested by Defendants reasonable. This conclusion is based on (1) the experience of each lawyer and paralegal, (2) rates previously approved in this District for professionals with comparable experience, (3) the high quality of defense counsel's work product and their complete success in defending against Landi's claims, and (4) the Court's own knowledge and expertise.

The Court also finds the hours worked reasonable. Contrary to Landi's claims, the Billing Report is a meticulous and contemporaneous record of the hours expended. Hosley reviewed the time logs and deleted excessive, redundant, and unnecessary entries, and Landi does not object to any particular entries. And the total amount is not facially unreasonable, considering the statutory factors and amount of damages Landi sought.[2] Thus, the Court will award Defendants $189,501.00 in attorneys' fees.

## II.   Costs

Defendants seek costs taxable under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54, which create a strong presumption that the prevailing party in a federal lawsuit will be awarded the following costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923

---

[2] Landi's lowest settlement demand was apparently $900,000, and he asked the jury for a $2 million verdict after the Court struck his claim for punitive damages just before trial.

of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  Since Defendants are the prevailing party, they must submit a request for costs that enables the Court to determine what costs were incurred and whether Defendants are entitled to them.  *Joseph v. Nichell's Caribbean Cruise, Inc.*, 950 F. Supp. 2d 1254, 1258 (S.D. Fla. 2013).  Landi "bears the burden to demonstrate that a cost is not taxable, unless the knowledge regarding the proposed cost lies within the exclusive knowledge of the prevailing party."  *Id.* at 1257-58 (quotation marks and citation omitted).

Defendants request $26,722.74 in costs, broken down as follows:

- Fees of the clerk:                      $400.00
- Fees for transcripts:                   $14,307.75
- Fees for printing:                      $3,526.15
- Fees for witnesses:                     $4,733.86
- Fees for exemplification and copies:    $3,754.98

(Doc. 198).  Hosley certified that all costs were necessarily incurred.

Like the preceding section of his brief, Landi's argument on costs begins with several plagiarized paragraphs, this time from *Travelers Indemnity Co. of Conn. v. Attorney's Title Ins. Fund, Inc.*, 2:13-CV-670-FTM-38CM, 2019 WL 359862, at *3 (M.D. Fla. Jan. 14, 2019).  Landi objects to all costs except the $400 filing fee and $120 in witness fees.

### A. Copying Costs

Costs of photocopies are taxable if they are necessarily obtained for use in the case.  *Joseph*, 950 F. Supp. 2d at 1258.  The copies need not be used at trial or filed with the Court.  *Id.*  Instead, the Court considers "whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue."  *Id.* at 1259

(quoting *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000)).  The costs of copies made merely for the convenience of Defendants or their counsel are not taxable.  *Id.*

Defendants request taxation of $3,754.98 for in-house black and white copying and printing at a rate of $0.10 per page, $316.60 for in-house color printing at a rate of $0.50 per page, $1,203.56 for copies of Landi's medical records, and $2005.99 for outsourced copying and printing.  To support these amounts, Defendants submitted a Revised Summary of Accounting Costs.  Each entry for in-house copying and printing includes the date, the name of the person who made the entry, the number of pages, the amount charged, and a generic description, e.g., "Accrued in-house B&W document printing."  Defendants do not identify the documents or say why they were copied or printed, so the Court cannot determine if they were necessary.  The Court will thus deny the in-house copying and printing costs.

The entries for outsourced printing include more information.  Defendants spent $482.08 copying documents for a deposition and $1,523.91 for 1,929 color prints about a week before trial, which is consistent with Defendants' trial exhibits.  These copies were necessary, as were copies of Landi's medical records.  The Court will award Defendants $3,209.55 in copying costs.

**B.  Witness Fees**

Defendants request $4,733.86 in airfare and ground transportation costs for three witnesses.  Landi contends 28 U.S.C. § 1821 limits Defendants to $40 per day, per witness, and he consents to taxation $120.00 in witness fees.  § 1821(c) allows taxation of witness travel costs, provided they use a common carrier at the most economical rate

10

reasonably available. But it requires the prevailing party to furnish a receipt or other evidence of actual cost. Defendants did not submit receipts, so they cannot recover witness travel costs. The Court will award $120.00 in witness fees.

### C. Transcripts

Defendants seek taxation of $14,307.75 for deposition, trial, and hearing transcripts and video recording costs for the depositions of Lori Landi and Leonard Gabourel. Defendants support their request with entries in their accounting summary. Landi objects to all of it.

28 U.S.C. § 1920(2) authorizes taxation of deposition costs, but only if the deposition was necessarily obtained for use in the case. *W & O*, 213 F.3d at 620-21. Four of the entries in Defendants' accounting summary fail to identify the witness, preventing the Court from evaluating their necessity. Five other entries identify the witness, but Defendants have not explained their relationship to the case. The Court will exclude those from the cost award. Landi included the remaining deposed witnesses in the witness list he filed with the Court. The transcripts from those depositions are taxable. *See id.* at 621 ("Taxation of deposition costs of the witnesses on the losing party's witness list is reasonable…"). The Court will award the following deposition transcript fees:

- L. Landi:                     $397.50
- L. Gabourel:                  $860.70
- Dr. Parent:                   $325.05
- P. Landi & Dr. J. Landi:      $507.05
- Dr. Orbay:                    $502.65
- Dr. Kendel:                   $545.55

Video depositions are taxable if the prevailing party shows "why it was necessary to have both a video deposition and a transcribed deposition for use in the case." *H.C. v. Bradshaw*, 426 F. Supp. 3d 1266, 1285 (S.D. Fla. 2019). Defendants argue videotaped

depositions were necessary to capture how Landi used the saw at the time of his injury. But the two cost entries identified as video services were for Gabourel and L. Landi, neither of whom witnessed the injury. The unidentified deposition entries might be videotaped depositions, but the Court can only speculate. The Court will not award costs for video depositions.

Trial transcripts are not allowed as a matter of course but can be awarded when the length and complexity of the case make them necessary. *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1226 (11th Cir. 2002). The length and complexity of this case alone do not warrant an award for daily trial transcripts, and Defendants do not explain why they needed hearing and trial transcripts. The Court will not award these costs.

In sum, the Court will award Defendants $3,138.50 in transcript costs.

### D. Post-Judgment Interest

Finally, Defendants request post-judgment interest on its taxable costs. Landi does not object. 28 U.S.C. § 1961 provides for interest on civil money judgments awarded by district courts. "When a district court taxes costs against a losing party, the award of costs bears interest from the date of the original judgment." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994). The post-judgment interest rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week proceeding." 28 U.S.C. § 1961(a). The Clerk entered judgment in this case on January 14, 2020. The rate for the week ending January 10, 2020, was 1.54%. An equal rate of interest will apply to the cost award from January 14, 2020, until it is paid.

Accordingly, it is now

**ORDERED:**

Defendants Makita USA, Inc. and Home Depot USA, Inc.'s Motion for an Award of Attorneys' Fees and Costs (Doc. 192) is **GRANTED in part and DENIED in part**.

(1) Defendants are awarded **$189,501.00** in attorneys' fees.

(2) Defendants are awarded **$6,868.05** in costs, plus interest at a rate of 1.54% per annum from January 14, 2020, until paid.

(3) The Clerk is **DIRECTED** to amend the judgment to include the above fee and cost awards in favor of Defendants and against Plaintiff John Landi.

**DONE** and **ORDERED** in Fort Myers, Florida this 3rd day of June, 2020.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record